# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEJANDRO JOSUE JUAREZ SIBRIAN, Petitioner | : | No. 3:26cv2929 |
| | : | (Judge Munley) |
| v. | : | |
| CRAIG A. LOWE, Warden, Pike County Correctional Facility; DAVID O'NEILL, Acting Field Office Director, Philadelphia Field Office, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Attorney General of the United States, in their official capacities, Respondents | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM ORDER

Before the court is a petition for writ of habeas corpus filed by Petitioner Alejandro Josue Juraez Sibrian, pursuant to 28 U.S.C. § 2241.[1] (Doc. 1). Petitioner is a native and citizen of El Salvador who traveled to the United States to live with his mother when he was seven years old. Id. ¶¶ 17–19. He is in the

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner filed the instant petition while detained at Pike County Correctional Facility. (Doc. 1 ¶ 1). Petitioner asserts that his continued detention violates the Immigration and Nationality Act and the Due Process Clause under the Fifth Amendment. Id. at 9–10. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility, in Lords Valley, Pennsylvania. Id. ¶ 1. His petition asserts that he was arrested in a manner that violates the Immigration and Nationality Act and that his detention violates his due process rights under the Fifth Amendment. Id. at 9–10. After review of the record, the petition will be denied.

According to the petition, Juarez Sibrian is 19 years old. Id. ¶ 1. Petitioner's mother, Roxana Guadalupe Juarez Sibrian, who was working as a phlebotomist in El Salvador, fled to the United States to escape extortion and violence by gang members. Id. ¶ 18. After his mother departed, petitioner faced harassment and beating from older children. Id. And so, "in or around January 2014," petitioner's mother brought Juarez Sibrian to the United States at the age of seven. Id. ¶¶ 18–19.

On September 5, 2026, petitioner "was on a family camping trip . . . at the Lake Glory Campground near Catawissa, Pennsylvania." Id. ¶ 29. The petition recounts the events that led to petitioner's arrest:

> Because dogs were not permitted at the campground's water park, the family left their dog at the campsite in a shaded area with food and water, tied to a tree with a long lead. While they were gone, the dog began barking; campground rangers removed him and left a note. When Petitioner went to the office to retrieve the dog, staff told him they considered leaving the dog there to be animal abuse and had called the police. An officer of the Locust Township Police Department, which participates in ICE's 287(g) Task Force Model program,

> responded, told Petitioner he would not arrest him, and issued him a ticket. The officer nevertheless took Petitioner's driver's license, ran his information, asked him whether he was undocumented, and told him he wanted to speak with him at the police station. Petitioner went with the officers to the station, where they contacted the ICE Enforcement and Removal Operations ("ERO") Williamsport Sub-Office; ICE officers eventually arrived and detained him.

Id. ¶ 29 (citations omitted).

After ERO personnel ran petitioner's record check, but before ICE took custody, ERO issued a warrant for Juarez Sibrian's arrest. Id. ¶ 30. After declining to voluntarily depart, ICE issued a Notice to Appear, which charges him with violating 8 U.S.C. § 1182(a)(6)(A)(i) for being "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Id. ¶ 31; Doc. 4-2 at 3. Petitioner has no criminal record. (Doc. 1 ¶ 2).

Respondent[2] acknowledges that petitioner is detained under 8 U.S.C. § 1226(a). (Doc. 4 at 2). And that statute and its implementing regulations "require[ ]" a bond hearing. Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018). Petitioner was afforded a bond hearing, known as a custody redetermination hearing in immigration parlance, on September 28,

[2] Although petitioner named four respondents, (see Doc. 1 at 1), typically "the [only] proper respondent" to a petition for writ of habeas corpus "is the warden of the facility where the prisoner is being held." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The government argues the only proper respondent here is Craig Lowe, Warden of the Pike County Correctional Facility. (Doc. 4 at 5–6). The court agrees with this argument. As such, the court will dismiss the other respondents as improper.

2026. (Doc. 1 ¶ 32). At the hearing, the immigration judge denied bond, with the stated reasons of "flight risk: limited community ties based on family, community, employment, and address; limited prospects for relief." (Doc. 1-9 at 2). Petitioner argues that such a finding "cannot be reconciled with the record," because petitioner "has lived for years at the same address with his mother and U.S. citizen sister, works full time, [and] belongs to his parish." (Doc. 1 at 2).

Under 8 U.S.C. § 1226(e), federal courts "lack jurisdiction to review any discretionary determinations underlying [an] IJ's bond decision, [but] may review whether the bond hearing was fundamentally unfair." Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 & nn.7–8 (3d Cir. Feb. 25, 2022) (citing Sylvain v. Att'y Gen., 714 F.3d 150, 155 (3d Cir. 2013)). "There are three pillars of a fair hearing: (1) the IJ engages in fact-finding based on the record made at the hearing and disclosed to the noncitizen; (2) the noncitizen has the opportunity to make arguments and present evidence on his/her own behalf; and (3) the IJ makes an individualized determination of the noncitizen's claims." B.C. v. Att'y Gen. U.S., 12 F.4th 306, 313 (3d Cir. 2021) (citing Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 386 (3d Cir. 2001)).

The court has reviewed the transcript of petitioner's custody redetermination hearing, and the hearing was fair. While petitioner argues that the IJ ignored the fact that petitioner "has lived for years at the same address

with his mother and U.S. citizen sister, works full time, [and] belongs to his parish," (Doc. 1 at 2), at the hearing, petitioner's counsel stated "He's lived in three states since coming to United States; South Carolina for a little bit of time, Virginia for a little bit of time. Majority has been in Georgia with his mother." (Doc. 4-5 at 7). Petitioner's counsel pointed out that petitioner's mother was also undocumented, and petitioner's counsel stated petitioner's work history was "very, very minimal, as he – you know, is working part time jobs pretty much to help around the house with his mom." Id. Petitioner's counsel also stated, "I understand that there, there is potentially a flight risk component given that he is here undocumented." Id. The immigration judge stated that he had reviewed all of the information submitted and decided that there was "a fairly limited case for bond right now"—so much so that he asked counsel if he wanted to withdraw the bond request. Id. at 12. The IJ fairly determined that petitioner had not met his burden to demonstrate he was not a flight risk, and this court is without jurisdiction to review that decision.

Petitioner also argues that he is entitled to immediate release because he was seized by the Locust Township Police Department before a warrant was issued for his arrest. (Doc. 1 at 10).

Locust Township Police Department is "a 287(g) participating agency." (Doc. 4-2 at 21). Section 287(g) of the Immigration and Nationality Act, codified

at 8 U.S.C. § 1357(g), allows the Attorney General to enter into agreements with state and local law enforcement and to confer upon those agencies the authority to perform immigration officer functions. One such function is "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." § 1357(a)(1). Such interrogation does not require a warrant. Id. An immigration officer may also arrest an alien without a warrant, but only if the alien "is likely to escape before a warrant can be obtained for his arrest." § 1357(a)(2).

Petitioner argues that when he was arrested, no officer determined that he was likely to escape before a warrant could be obtained, as evidenced by the lack of notation of such a determination in petitioner's I-213 form. (Doc. 1 at 1, 5). And so, he argues that his warrant without an arrest was unlawful, and therefore so is his custody. Respondent does not engage with the argument. (See generally Doc. 4). Nevertheless, the court is skeptical that an officer's determination of the likelihood of escape must be memorialized in an I-213 form, and petitioner cites to no authority establishing such a requirement. The court is mindful that petitioner, a Georgia resident with a driver's license, was questioned about his citizenship at a Pennsylvania campground. In such circumstances, an officer could reasonably anticipate petitioner's immediate escape if he were released after questioning. See Castañon Nava v. Dep't of Homeland Sec., 806

F. Supp. 3d 823, 854 (N.D. Ill. 2025), aff'd in part, 175 F.4th 828 (7th Cir. 2026) (proximity to home or workplace among factors courts consider when determining likelihood of escape).

For these reasons, it is hereby **ORDERED** that:

1) David O'Neill, Markwayne Mullin, and Todd Blanche are dismissed from this action as improper respondents;

2) Alejandro Josue Juarez Sibrian's petition for writ of habeas corpus, (Doc. 1), is **DENIED**;

3) The Clerk of Court is directed to enter judgment in accordance with this memorandum order; and

4) The Clerk of Court is directed to close this case.

**Date:** 11/10/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**